IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARMAINE LIVINGSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 03-1935 |
| | ) |
| ALLEGHENY COUNTY SHERIFF'S DEPARTMENT, | ) |
| et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

# OPINION
## and
## ORDER OF COURT

### SYNOPSIS

In this civil action brought pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments, Plaintiff challenges a policy that bans hospitalized prisoners from receiving visitors. Previously, by Order dated February 4, 2005, I entered judgment in favor of Defendant on Plaintiff's First Amendment claim.

Now, Defendant has filed a Second Motion for Summary Judgment, asking that I apply to Plaintiff's Fourteenth Amendment claims the same standards utilized in my February 4 Order. The parties agree that those standards apply to Plaintiff's outstanding claims. In opposition to Defendant's Motion, however, Plaintiff requests that I reconsider the manner in which I employed those standards.

For the following reasons, Defendant's Motion will be granted.

### I. <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. <u>International Raw Materials, Ltd. V. Stauffer Chem . Co.</u>, 898 F. 2d 946, 949 (3d Cir. 1990). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. <u>United States v. Omnicare, Inc.</u>, 382 F. 3d 432, 436 (3d Cir. 2004). Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. <u>Celotex Corp. v. Cattrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986).

### II. <u>FACTS</u>

In light of my prior Order on a similar subject, I will assume that the parties are familiar with the material facts. Therefore, for purposes of the present Motion, I will merely emphasize select portions of the factual record. Unless otherwise indicated, the following facts are undisputed.

The hospital environment at issue is not a "secured closed environment," but "an open environment which includes health care workers, [and] citizens...." with "people walking past [a prisoner's] room, in and out of other rooms." Prisoners may

be in either a private room or a room with other patients. Several times in the past, prisoners have attempted escapes from the hospital. Only one of those incidents involved a visitor. Prior to the installment of the challenged policy, approximately thirty years ago, a visitor to a hospitalized prisoner attempted to facilitate an escape. In addition, in one incident in 2003, a prisoner briefly took a nurse hostage.

Importantly, I note here a semantic difference in interpretation between the parties. Plaintiff urges that the challenged policy permits visitation only by those who obtain a court order. In contrast, Defendant urges that the policy prohibits all visitors, but also acknowledges the reality that court orders must be obeyed.

### III. DISCUSSION

As with the previous summary judgment issues, the parties now agree that Turner v. Safley, 482 U.S. 78, 96 L. Ed. 2d 64, 107 S. Ct. 2254 (1987),[1] applies to Plaintiff's Fourteenth Amendment claims. Accordingly, Defendant argues in favor of the demise of those claims. In opposition to Defendant's Motion, however, Plaintiff urges that our Court of Appeals' recent decision in Banks v. Beard, 399 F.3d 134 (3d Cir. 2005), requires that I reassess my initial application of Turner.[2]

Again, as previously, Plaintiff does not contest that Defendant has asserted

---

[1] In my February 4 Order, I discussed the Turner factors as examined in Overton v. Bazetta, 539 U.S. 126, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003). Those factors are as follows: 1) a valid rational connection between the regulation and the asserted legitimate governmental interest; 2) whether there are alternative means of exercising the right in question; 3) the impact the accommodation of the asserted constitutional right will have on guards and other inmates; and 4) whether there are ready alternatives to the regulation that fully accommodate the prisoner's rights at de minimus cost to valid penological interests. Turner, 482 U.S. at 89-91.

[2] Plaintiff objects to my citation of English v. Board of Educ. Of Town of Boonton, 301 F. 3d 69, 82 (3d Cir. 2002). The Turner standard, however, is similar to the standard identified in English. Waterman v. Farmer, 183 F.3d 208, 215 (3d Cir. 1999). In any event, my February 4 Order relied primarily and directly on Turner and its progeny.

legitimate and neutral penological interests.[3] Instead, Plaintiff argues primarily that those interests are not rationally connected to the challenged policy. Plaintiff further argues that Banks requires diligent application of Turner, rather than deference to prison decisions.

In Banks, the plaintiff challenged a prison's policy prohibiting certain prisoners from receiving non-legal and non-religious subscription periodicals. Id. at 137. The prison justified the policy, asserting that using the periodicals as a privilege encouraged improved prisoner behavior, and that fewer materials in the cell made it easier to detect contraband and provide security. Id. at 138. Moreover, the prison asserted that periodicals could be used as weapons or for fueling fires. Id. The court did not accept the prison's justifications, in part because the prison's justifications were illogical in context, and because the record was devoid of evidence that supported those justifications. Id. at 141, 143. For example, the court observed that religious and legal periodicals permitted the prisoners, and other permitted objects and paper goods, posed the same security risks as the banned materials. Id. at 143.

In reaching its conclusions, the Court of Appeals did not alter the essence of the decision and rationale in Turner. It cautioned that Turner's factors must be "diligently weighed." Id. at 140. It also cited Turner's disapproval of any prison rule that constitutes an "exaggerated response to petitioners' rehabilitation and security concerns," or that "'sweeps much more broadly' than can be explained by the stated

---

[3]As Plaintiff phrased it, "The Sheriff admittedly has a legitimate security interest in making sure the prisoner doesn't flee, take a hostage or commit a crime."

objectives.'" Id. at 139-40. Banks did not alter the burden of proof established by prior case law – e.g., that a prison need not prove the validity of its regulation. Overton, 539 U.S. at 132; Williams v. Morton, 343 F.3d 212, 217 (3d Cir. 2003).[4] Moreover, Banks did not abandon the deferential nature of the Turner factors, as repeatedly emphasized in pertinent cases. E.g., Turner, 482 U.S. at 89; Overton, 539 U.S. at 132. Indeed, in Banks, the Court of Appeals characterized its evidentiary requirement as one aspect of the first Turner factor, terming it "a complementary part of the analysis in determining whether an asserted goal is logically connected to the prison regulation." Banks, 399 F.2d at 142. Clearly, deference and diligence are not mutually exclusive modes of review.

I have carefully examined the parties' arguments with these principles in mind, and do not believe that they mandate a departure from the conclusions reached in my February 4 Order. Instead, as applied to the remaining claims in this action, the relevant factors entitle Defendant to judgment on Plaintiff's remaining claims.

Plaintiff's argument focuses primarily on an alleged failure to comply with Banks' evidentiary requirement. That requirement, however, must be viewed in light of the nature of the facial connection between the challenged policy and its stated goal. Wolf v. Ashcroft, 297 F.3d 305, 308-09 (3d Cir. 2002). I would not, for example, require proof of prior problems if the challenged policy prohibited violent prisoners from possessing loaded machine guns. In that case, the connection is so

---

[4]This standard applies in the context of a defendant prison's motion for summary judgment. See, e.g., Williams, 343 F.3d at 216-217.

obviously rational that it would be absurd to do anything other than require a lesser or different type of showing from the defense. In Banks, the defendants asserted that certain periodicals posed security risks of fire and concealed contraband, but prisoners were permitted to possess other periodicals and paper goods. Therefore, the required connection was not self-evident, and the prison's limitation was facially suspect. In that context, the total absence of supporting factual evidence certainly "reinforce[d] the conclusion" that the rule and its stated purpose lacked rational connection. Banks, 399 F.3d at 142 n.10.

Although not closely analogous, of course, the facts here lean more towards my hypothetical weapons ban than towards the policy at issue in Banks. It is patently reasonable to restrict visitors to prisoners housed in an unsecured hospital facility; moreover, there are no related policies that undermine the legitimacy of the visitation rules. Indeed, as the Supreme Court has observed in another context, the connection between visitation and prison security is "too obvious to warrant extended discussion." Block v. Rutherford, 468 U.S. 576, 586, 104 S. Ct. 3227, __ L. Ed. ___ (1984). The interest asserted here is one in preventing visitors from bringing contraband, and from assisting escape, and also in ensuring the safety of prisoners, law enforcement, and hospital personnel, in a facility that is not geared primarily toward criminal detention. Accordingly, the Sheriff bans visitors unless faced with a court order directing a visit.[5] I note that Plaintiff suggests that many people will

---

[5] Plaintiff takes certain of Sheriff DeFazio's statements out of context. When Sheriff DeFazio stated, in his deposition, that he might have "bent the rules" to permit a visit based on his "professional assessment that there is, in fact, no sufficient danger or threat of escape"–and been disciplined for it–he clearly referred to that possibility in isolated cases, and not that visitors never represent such threat or danger.

not have the wherewithal to obtain a court order; if I were to accept her argument, it would follow that the policy de facto lessens the number of visitors. Here, the connection is facially valid and rational. Cf. id.

Moreover, unlike in Banks, the present record contains evidence that supports the relationship to a legitimate, neutral goal as required by Turner. As observed in my previous Order, the record reflects at least one security incident involving a visitor attempting to assist a hospitalized prisoner's escape. Indeed, the Sheriff testified that the present policy has been in place since that incident occurred. Id. at 18. Particularly in light of the close connection between the policy and Defendant's stated goals, the fact that the incident might be remote in time does not strip it entirely of evidentiary value.[6] Unlike in Banks, therefore, the connection here amounts to more than mere unsupported inference, hope, or belief.[7]

With regard to the Turner factor that asks whether Plaintiff has alternative means to exercise the right at issue, Plaintiff avers that because Defendant's policy essentially precludes communication between prisoners and their families, the prisoner's right deserves greater weight. "[T]his ['alternative means'] inquiry depends in part on how the scope of the constitutional right is defined." Banks, 399 F.3d at 144 n.6. Plaintiff's Memorandum focuses on her and her son's alleged associational rights; she has not, however, moved for reconsideration of my

---

[6]Indeed, it is not inconceivable that there have been no recent incidents because the policy is effective.

[7]Additionally, Banks is distinguishable from the present case to the extent that Banks was concerned with the rehabilitiation objective. Unlike the security objective at issue here, the rehabilitiation objective is "amorphous and ill-defined." Banks, 399 F.2d at 140. When security is at issue, particular deference is appropriate. Id. at 140 n.6. Ramirez v. Pugh, 379 F.3d 122 (3d Cir. 2004), on which Plaintiff also relies, likewise focused on a rehabilitative goal.

February 4 Order regarding those rights. As such, those rights are not before me at present.

To the extent that Plaintiff intends to rely on a right involving financially-based discrimination, which is not vetted in her present Memorandum, there exist the available alternatives of proceeding <u>pro se</u> or <u>in forma pauperis</u>.[8] In addition, there is no evidence that Defendant, or the courts for that matter, treated Plaintiff differently than any other potential visitor. She makes no claim that the ready alternatives are somehow insufficient to protect her rights; such a claim would appear similar to an indigent's basic claim of access to the courts. The likelihood that some persons will be less resourceful than others is not, here, of constitutional magnitude. To the extent that she intends to rely on some other due process right, she has not identified or defined the contours of that right in a manner that permits any level of analysis. Therefore, in that respect, I am unable to give Plaintiff's son's alleged rights the weight requested. To the extent that analysis regards Plaintiff's Fourteenth Amendment claims, this factor weighs in Defendant's favor.

Additionally, Plaintiff suggests that because Defendant presented no evidence of how alternative policies would impose additional burdens, the third and fourth prongs of <u>Turner</u> weigh against the validity of the policy. Plaintiff asserts that her suggested accommodation is "far more likely to have no effect or even a positive one" – i.e., that there might be fewer visitors. Neither party, however, addresses

---

[8] As stated in my February 4 Order, Plaintiff does not claim that Defendant treated her differently than any other potential visitor.

the impact of the accommodation on government resources or prisoners' rights, as a matter of record, and I see no reason to depart from my previous conclusions. The difficulty of obtaining free legal services does not convince me that the possibility of Sheriff-driven visitor screening is entitled to significant weight in this case, given that Plaintiff could accommodate her alleged equal protection rights by proceeding pro se or in forma pauperis. Previously, I found that this factor did not weigh in favor of either party. Presently, I am not persuaded that the existence of alternatives constitutes evidence of unreasonableness.

I emphasize, too, that the Turner factors are "considerations" and "relevant factors" to be weighed in assessing overall reasonableness. See, e.g., Waterman v. Farmer, 183 F.3d 208, 213 (3d Cir. 1999). Although the first factor is particularly important, all of the requirements "serve as guides to a single reasonableness standard." Id. at 213-14. Therefore, even if the first factor weighed only slightly in favor of constitutionality, my final conclusion would remain unchanged. As a whole, the analysis leads to a determination of overall reasonableness.

I understand that Plaintiff's concern with Defendant's policy is not necessarily the ban itself—which Plaintiff said would be "easier to justify" if it did not contain a court order component— but, essentially, that the Defendant will obey a court order, but does not provide the court or visitors with any guiding standards. The lack of standards, Plaintiff argues, renders the process impermissibly arbitrary. Plaintiff has suggested that, instead, the Sheriff's Department itself should do the screening, and should define particular considerations such as the prisoner's medical

condition, or criminal history.[9] In making this argument, however, Plaintiff has not proffered any authority that would require Defendant to provide potential visitors with written instructions on how to navigate the court system, or to advise the judge how to determine the propriety of visitation.[10]

Plaintiff's proposal, she asserts, would have a positive effect on security, and on both parties to this litigation. Her argument, however, is more properly seen as advocating in favor of a better solution to an administrative problem, rather than against an unconstitutional government practice. In other words, arbitrariness might well belie inefficiency, unfairness, or ineffectiveness; it does not, however, necessarily translate to an impermissibly exaggerated, overbroad response to legitimate security concerns. The mere existence of a workable alternative is not, as Plaintiff claims, "enough."

I certainly cannot abdicate my duty to rigorously evaluate alleged infringements on guaranteed rights. Even if the Defendant's policy is an oddity, however, I cannot substitute my administrative judgment for that of the County Sheriff's Department; nor can I review the propriety of the state court's method of assessing petitions brought before it.

## CONCLUSION

In sum, I have diligently and critically applied all of the pertinent factors as required by Turner and its progeny, and find that they do not render the

---

[9] As observed in my February 4 Order, Plaintiff proposed several examples as ready alternatives, all of which would place the screening in the Sheriff's hands with few or no guidelines.

[10] Instead, if deemed necessary, Defendant will appear in court to provide the judge with information. Of course, this is not unlike many court proceedings, which may be decided according to judicially-created standards outside of an institutional written policy.

Defendant's policy unconstitutional.  Instead, there is no genuine issue of material fact that the regulation is reasonably related to legitimate penological interests.  Defendant has demonstrated that it is entitled to judgment as a matter of law on Plaintiff's Fourteenth Amendment claims.  Moreover, Plaintiff has not made a showing sufficient to establish the existence of elements essential to those claims.  I will, therefore, grant Defendant's Motion for Summary Judgment.

      An appropriate Order follows.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARMAINE LIVINGSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No.  03-1935 |
| | ) |
| ALLEGHENY COUNTY SHERIFF'S DEPARTMENT, et al., | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this **23rd** day of September, 2005, after careful consideration and for the reasons set forth above, it is ORDERED that Defendant's Motion for Summary Judgment (Docket No. 23) is GRANTED. This matter shall be marked closed, forthwith.

BY THE COURT:

/S/  Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge